UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION


FILED
NOV 20 2017

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| MEIERHENRY SARGENT LLP, a <br> South Dakota limited liability partnership, <br><br> Plaintiff, <br><br> vs. <br><br> BRADLEY WILLIAMS and <br> KERRY WILLIAMS, <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

CIV 16-4180

MEMORANDUM OPINION
AND ORDER ON PLAINTIFF'S
MOTION FOR RELIEF FROM STAY
AND FOR ORDER
TO DECLARE THE SCOPE OF
ARBITRATION PROCEEDINGS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending before the Court is Plaintiff's Motion for Relief from Stay and Motion for Order to Declare the Scope of Arbitration Proceedings, Doc. 16. A hearing was held and argument was heard on the Motion on October 26, 2017 with Plaintiff's counsel appearing in person and Defendant's counsel appearing by telephone. For the reasons set forth herein, Plaintiff's Motion is granted.

## BACKGROUND

In 2015 and part of 2016, Defendants, residents of Mendota Heights, Minnesota, owned agricultural land in Lincoln County, South Dakota. During this time, Dakota Access, LLC ("Dakota Access") was seeking to acquire easements from landowners in various counties, including Lincoln County, in order to build an oil pipeline. In January of 2015, Defendants hired Plaintiff, a Sioux Falls, South Dakota law firm, to advise and consult with them about various legal matters related to the proposed pipeline ("First Hiring"). The First Hiring representation ended sometime before October of 2015.

In the First Hiring, the parties agreed Defendants would pay Plaintiff on a per hour basis at the rate of $275/hour for Mark Meierhenry's time, $160/hour for Christopher Healy's time, and $75/hour for their legal assistant's time. At the time the First Hiring ended, Plaintiff alleged that

Defendants had an outstanding bill for services rendered in the amount of $593.60. There was not an arbitration provision in the terms of the First Hiring.

In October of 2015, Dakota Access initiated an eminent domain action against Defendants. In December of 2015, Defendants retained Plaintiff to represent them in those proceedings ("Second Hiring"). Plaintiff and the Defendants entered into an Attorney Fee Contract ("Contract") which provided that Defendants would pay Plaintiff one-third of the amount of settlement negotiated by the Plaintiff, less the $101,082.56 settlement offer negotiated by the Defendants prior to retaining Plaintiff.[1] The Contract also contained a "Fee on Termination" clause, which provided:

> If Client terminates Firm's employment before conclusion of the case without good cause, Client shall pay Firm a fee and expenses based on the fair and reasonable value of the services performed by Firm before termination. If any disagreement arises about the termination fee, the client may choose two persons from a service profession, and the Firm may choose one person. The firm will be bound by a majority decision of the three persons as to a fair fee. If the Firm terminates the representation, then it shall receive no fee or expenses.

Notably, the provision is silent as to who, the panel of arbitrators or the Court, decides the scope of arbitration. Ultimately, Plaintiff and Defendants had a falling out, resulting in the termination of Plaintiff's services. There is now a dispute regarding the fees and expenses owed as a result of the termination.

On November 17, 2016, Plaintiff filed a two-count Complaint against Defendants in Minnehaha County state court, seeking payment for its fees for the First and Second Hirings. On

---

[1] The Contract provided the contingent fee would be calculated as follows:

> STEP 1: If the case is settled, start with the total settlement amount;
> If the case is tried to a verdict, add together the amount of the verdict, and the amounts awarded by the Court for attorney fees, statutory disbursements and interest, if any;
> STEP 2: Subtract the amount of the Pipeline Company's offer to purchase the property, which in this case is $101,082.56;
> STEP 3: The attorney fee shall be 33 1/3% of the amount remaining after deduction of the Pipeline Company's offer; plus gross receipts tax at the lawful rate at the time of payment.

December 30, 2016, Defendants filed a timely notice of removal pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332. On January 6, 2017, Defendants filed a motion requesting this Court to stay the action and compel arbitration of Count II pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and Fed. R. Civ. P. 12(b0(1). On May 1, 2017, this Court issued a Memorandum Opinion and Order on Defendants' Motion to Stay Action and Compel Arbitration, granting the stay and compelling arbitration of Plaintiff's claim for money owed under the Contract.

After Defendants' Motion was granted, Defendants presented Plaintiff with an Answer, Affirmative Defenses, and Counterclaims. The first three of the twelve counterclaims involve the First Hiring and the remainder the Second Hiring. The parties subsequently began discussing protocols and procedures for the arbitration. Plaintiff asserts that throughout these discussions, Plaintiff filed submissions stating that the arbitrators do not have authority to determine the arbitrability of Defendants' Counterclaims and that the Counterclaims were not arbitrable. On August 2, 2017, the Arbitration Panel ("Panel") proposed procedures based on the parties' competing proposals, including that the Counterclaims were arbitratrable, and on August 9, 2017, the parties and the Panel held a phone conference to discuss the parties' positions. The arbitrability of Count I and Counterclaims I-III was not submitted to the Panel. On August 23, 2017, Plaintiff filed this Motion for Relief from Stay and Motion for Order to Declare the Scope of the Arbitration Proceedings. The following day, the Panel issued an order on the parties' positions, but because Plaintiff had added new counsel and filed this motion with the Court, the Panel deferred addressing arbitrability in its order.

Ultimately, Plaintiff challenges the arbitrability of Counterclaims IV, V, and IX-XII. Plaintiff argues that it is for the Court, not the Panel, to determine the arbitrability of the Counterclaims and therefore asks the Court to determine the scope of the arbitration proceedings. In response, Defendants argue Plaintiff should be estopped from submitting to the Court the issue of arbitrability of Defendants' Counterclaims and that the arbitration provision of the Contract is broadly drafted to include all of Defendants' Counterclaims. For the reasons set forth herein, the Court finds

Plaintiffs are not estopped from submitting this issue to the Court. Therefore, the Court sets forth the scope of arbitration proceedings below.

## DISCUSSION

### ESTOPPEL

Defendants argue that, because Plaintiff submitted the issue of arbitrability to the Panel by arguing arbitrability in its own Brief in Support of Arbitration Protocols, "Plaintiff's request that the Court now stop the Panel from hearing the Counterclaims is untimely and waived." Plaintiff maintains, however, that it has firmly argued that the arbitrators do not have authority to determine the scope of the arbitration provision of the Contract through the entirety of the arbitration discussions. The Court need not tarry long with the issue of estoppel, however, as the question of whether a party submits the question of arbitrability to arbitration by merely arguing the arbitrability issue to an arbitrator has been squarely addressed by the Supreme Court in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995).

In addressing the question, the Court noted its practical importance "because a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of the dispute." *First Options*, 514 U.S. at 942. "Where the party has agreed to arbitrate, he or she, in effect, has relinquished much of that right's practical value." *Id.* Accordingly, "[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citing *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986) (emphasis added); *First Options*, 514 U.S. at 944). The question of whether the parties have waived their right to have the issue of arbitrability decided by the Court is similarly substantive, requiring resolution by the courts, because the question speaks to whether or not the parties have agreed to arbitrate the issue. *See First Options*, 514 U.S. at 943 ("[T]he question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter.") Thus, the question is not whether the parties waived their agreed upon right to arbitrate, a procedural matter left to the arbitrator to decide, *see Howsam*, 537 U.S. at 84-85

(citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983), but whether the parties demonstrated an agreement to arbitrate an issue at all.

"[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes-but only those disputes-that the parties have agreed to submit to arbitration." *First Options*, 514 U.S. at 943. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally (though with a qualification…) should apply ordinary state-law principles that govern the formation of contracts." *Id.* at 944. The referenced qualification applies when courts decide whether a party has agreed that arbitrators should decide arbitrability: "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e] evidence that they did so.'" *Id.* (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)).

"[M]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, i.e., a willingness to be effectively bound by the arbitrator's decision on that point." *Id.* at 946. Here, as the defendants did in *First Options*, Plaintiff has continuously forcefully objected to the arbitrators deciding the Counterclaims. *See id.* As the Supreme Court concluded, this does not demonstrate a clear willingness to arbitrate. *See id.* Instead, "one naturally would think that they did *not* want the arbitrators to have binding authority over them." *Id.* The basic objective of this area of law is "to ensure that commercial arbitration agreements, like other contracts, 'are enforced according to their terms." *Id.* at 947 (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 54 (1995) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989))). Accordingly, because the arbitration provision of the Contract is silent on the issue and because Plaintiff did not clearly agree to submit the question of arbitrability to arbitration, the arbitrability of the Counterclaims is subject to independent review by the Court.

## SCOPE OF ARBITRATION PROCEEDINGS

The way the law treats silence or ambiguity about the question of who decides arbitrability is different from the way it treats silence or ambiguity about the question "whether a particular

5

merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement." *Id.* at 944–45. With respect to the latter question, the law reverses the presumption, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrystler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

The Court has previously held that there is a binding arbitration agreement. The next question now presented is "as to whether a valid arbitration agreement applies to the subject matter at hand" and that "is a question for a court to consider." *EFCO Corp. & Const. Prods., Inc.*, 359 F.3d 954, 956 (8th Cir. 2004). The Court does determine that the arbitration clause in this Attorney Fee Contract is narrow. It is a typical contingent attorney fee contract based upon a percentage of the lift over an existing offer. The arbitration clause itself is limited to determining fees upon termination of the Firm's employment before conclusion of the case without good cause. By comparison, the Eighth Circuit has held a clause which provides for arbitrating any "claim arising out of or relating to th[e contract]" constitutes a broad arbitration clause. *Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co.*, 118 F.3d 619, 620-21 (8th Cir. 1997).

When the Court stayed this lawsuit and referred the amount of the fee dispute to arbitration by its Order and Memorandum Opinion of May 1, 2017, there was no counterclaim pending. The Court retained jurisdiction over the case. On August 23, 2017 Defendants filed their Answer and a 34 page Counterclaim in the Arbitration proceedings which also incorporated the Answer. The 12 counts in the Counterclaim are:

> Court I (Breach of Contract as to the "First Hiring")
>
> Count II (Declaratory Judgment as to the "First Hiring")
>
> Count III (Estoppel as to the "First Hiring")
>
> Count IV (Breach of Contract as to the "Second Hiring" ADR Provision)
>
> Count V (Anticipatory Breach of Contract as to the "Second Hiring")
>
> Count VI (Estoppel as to the "Second Hiring")

Count VII (Declaratory Judgment as to the "Second Hiring")

Count VIII (Fee Forfeiture as to the "Second Hiring")

Count IX (Breach of Fiduciary Duty as to the "Second Hiring")

Count X (Negligence as to the "Second Hiring")

Count XI (Forfeiture of Fees for Deceit as to the "Second Hiring")

Count XII (Defamation as to the "Second Hiring")

Also on August 23, 2017 Plaintiff filed its Motion for Relief from Stay and Motion for Order to Declare the Scope of the Arbitration Proceedings.

Counts I, II and III of the Counterclaim deal with the first hiring of counsel and are by agreement of the parties not before the Court.

The Court finds that the Attorney Fee Contract and clause 4 in particular are not ambiguous. The Court must determine in examining the Counterclaim whether sending those issues to arbitration would be forcing arbitration on a matter the parties "reasonably would have thought a judge, not an arbitrator, would decide." *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.,* 516 F.3d 695, 701 (8th Cir. 2008) (rehearing and rehearing *en banc* denied 2008).

The heading of paragraph 4 "FEE ON TERMINATION" of the Attorney Fee Contract, is not conclusive on this inquiry but it does provide some guidance on the intent of the parties when they contracted. Paragraph 4 states:

> 4. FEE ON TERMINATION. If Client terminates Firm's employment before conclusion of the case without good cause, Client shall pay Firm a fee and expenses based on the fair and reasonable value of the services performed by Firm before termination. If any disagreement arises about the termination fee, the client may choose two persons from a service profession, and the firm may choose one person. The firm will be bound by a majority decision of the three persons as to a fair fee. If the Firm terminates the representation, then it shall receive no fee or expenses.

The clients did terminate the firm's employment. The first question in arbitration then

7

becomes, was that termination without good cause.

If the arbitrators find that the termination when objectively considered was with good cause, then the Arbitration panel will determine what fees Plaintiff might receive. That is for the Arbitration panel to determine, but there could be a situation where there was a breakdown in the attorney-client relationship that provided cause for the termination of the relationship but at the same time there had been significant advance toward a conclusion of the case. The arbitration clause does not rule out that possibility, nor does it rule out no fees being recovered. If the termination was not for good cause, then the Arbitration panel must determine Plaintiff's fees. The arbitration clause in the Attorney Fee Contract provides those fees and expenses will be based on the fair and reasonable value of the services performed by Firm before termination. The above is what was sent to arbitration May 1, 2017 when the Court at the same time reserved jurisdiction over the case.

Other issues are presented by the subsequently filed Counterclaim. In summary, there are counterclaims for deceit including a demand for treble damages (Count XI). The arbitration panel is not in a position to consider and determine an award of treble damages. In addition, there are claims of unethical conduct. The unethical conduct claims have ramifications beyond a fee and a dispute as to its reasonableness. A claim of unethical conduct with a resulting negative finding could be the basis for further proceedings concerning the license to practice in this Court and in this state. Finally, there is a counterclaim for defamation for acts subsequent to the termination (Count XII).

Once an attorney fee determination is made by the Arbitration panel, there will be issues yet to be tried before this Court. However, there is some question about that as in a document filed September 14, 2017 "Plaintiff's Brief in Support of Arbitration Protocol," paragraph 1 of the conclusion requested "That the counterclaims asserted by Defendants be dismissed for any purpose other than defenses against Plaintiff's claim." That request is outstanding.

A REVIEW OF EACH COUNT OF THE COUNTERCLAIM AS TO
SECOND HIRING IS AS FOLLOWS:

Count IV although entitled "Breach of Contract" also includes a claim for false and defamatory statements. The parties could anticipate a breach of contract claim going to arbitration when they entered into the Attorney Fee Contract, but the parties would not have contemplated a defamation claim going to arbitration.

Count V entitled "Anticipatory Breach of Contract" claims damages outside of the fee dispute, claiming damages caused by Defendants retaining other counsel and damages caused "when Dakota Access refused to increase their settlement offers for a 3.41-acre easement beyond the $750,000 amount resulting from Plaintiff's unauthorized offer and the threat of an attorney's lien." The parties would reasonably have thought a judge, not an arbitrator, would decide those issues.

Count VI entitled "Estoppel" is a claim to remain before the Arbitration panel. Such a claim could have been reasonably contemplated by the parties as arising out of a termination fee dispute when the Attorney Fee Contract was entered into.

Count VII requests a declaratory judgment. The parties agree the declaratory judgment count should remain in arbitration.

Count VIII entitled "Fee Forfeiture." The parties agree it may remain in arbitration. (See page 11 of Document 17 regarding Count VIII and Defendants' counter in fn. 3 of Document 19 and Plaintiff's Reply (Doc. 22) that "parties agree that Plaintiff has challenged the arbitrators' authority to determine arbitrability of Defendants' Counterclaims IV, V, and IX-XII...")

Count IX is entitled "Breach of Fiduciary Duty." A breach of fiduciary duty claim as a defense to a fee dispute could reasonably have been contemplated by the parties when they entered into the Attorney Fee Contract with an arbitration clause as to a termination fee dispute. This overly broad pleading, however, goes further and goes on to claim "Plaintiff should have to pay damages

to Defendants, and/or Plaintiff should recover attorneys' fees only as offset by the damages Plaintiff has caused Defendants." Paragraph 232. Arbitrators determining damages against Plaintiff was not reasonably contemplated by the parties when they entered into the Attorney Fee Contract arbitration clause.

Count X is entitled "Negligence." In examining this Count as with the other Counts, the Court disregards the opening paragraph, 228, which incorporates "by reference the foregoing Paragraphs." If one literally does so, then the claim encompasses all claims and lacks any limitation. A negligence claim to defeat a fee claim in a termination fee dispute would reasonably be contemplated by the parties when they entered into the Attorney Fee Contract with one exception, that the parties would not have contemplated a separate award of damages against Plaintiff except as an offset against claimed attorney fees.

Count XI is entitled "Forfeiture of Fees for Deceit." As previously noted, this Count demands among other things, treble damages for deceit. The awarding of treble damages against Plaintiff would not have been reasonably contemplated by the parties when they entered into the Attorney Fee Contract and its arbitration clause.

Count XII is entitled "Defamation." That claim arises for claimed acts after the termination of representation by Plaintiff. Any determination in a defamation action arising subsequent to termination would be before this Court, not an arbitration panel. This defamation action going to an arbitration panel would not have been contemplated by the parties when they entered into the Attorney Fee Contract and its arbitration clause.

The Court appreciates the Arbitration panel awaiting this direction from the Court. The Court also observes that despite this dispute being in arbitration and also before this Court, the dispute could also be mediated before Magistrate Judge Duffy if all parties agreed to such mediation, as the Court will not order mediation.

Accordingly, IT IS ORDERED that the following Counts of the Counterclaim remain in arbitration:

1. Count IV except for the defamation claim.

2. Count VI. This estoppel issue is a different estoppel issue discussed earlier in the opinion where Defendants claimed that Plaintiff was estopped from questioning the scope of the arbitration. That estoppel claim by the Defendants was denied, that being a separate estoppel claim from Count VI which will remain in arbitration.

3. Count VII.

4. Count VIII.

5. Count IX, except that the arbitrator will not determine damages to be awarded against Plaintiff but only the Plaintiff's attorney fee question.

6. Count X except for any award of damages against Plaintiff.

IT IS FURTHER ORDERED that the Counts which are not before the Arbitration panel are Counts V, XI and XII.

IT IS FURTHER ORDERED that Plaintiff's Motion for Relief From Stay and Motion for Order to Declare the Scope of the Arbitration Proceedings, Doc. 16, is granted in part and denied in part.

Dated this 20ᵗʰ day of November, 2017.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
                DEPUTY

11